UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BANDY LEE, MD, MDiv, <br><br> Plaintiff, <br> v. <br> YALE UNIVERSITY, <br><br> Defendant. | CASE NO: 3:21-cv-00389-MPS <br><br> DECEMBER 13, 2021 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

TABLE OF CONTENTS

**Page(s)**

ARGUMENT ........................................................................................................................... 2

    I.    Yale's Decision Not to Reappoint Plaintiff Was an Academic Judgment Entitled to Deference. ................................................................................................................. 2

    II.   Plaintiff's Fails to State a Breach of Contract Claim for Additional Reasons. .................. 3

    III.  Plaintiff Fails to State a Violation of the Covenant of Good Faith and Fair Dealing. ......... 5

    IV.  Plaintiff Fails to State a Negligent Misrepresentation Claim .............................................. 6

    V.   Plaintiff Fails to State a § 31-51q Claim ............................................................................. 6

        A.   Plaintiff Has Not Alleged an Employment Relationship Under § 31-51q ...................... 6

        B.   Plaintiff Has Not Alleged She Was Disciplined or Discharged Under § 31-51q. ........... 8

        C.   Plaintiff Offers No Response to the Constitutional Arguments Against the Application of Section 31-51q ................................................................................... 10

CONCLUSION ..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bombalicki v. Pastore*,
  No. 378772, 2000 WL 726839 (Conn. Super. Ct. May 10, 2000)..............................9

*Craine v. Trinity College*,
  259 Conn. 625, 791 A.2d 518 (2002) ...................................................................1, 2

*Daley v. Wesleyan Univ.*,
  63 Conn. App. 119 (2001) ....................................................................................2, 3

*Edwards v. ECSU*,
  2017 WL 6601935 (Conn. Super. Ct. Nov. 22, 2017)................................................8

*Geysen v. Securitas Sec. Servs. USA, Inc.*,
  322 Conn. 385, 142 A.3d 227 (2016) .......................................................................6

*Landry v. Spitz*,
  102 Conn. App. 34, 925 A.2d 334 (2007) ................................................................5

*Matthews v. Dep't of Pub. Safety*,
  2013 WL 3306435 (Conn. Super. Ct. May 31, 2013)..............................................10

*McNeil v. Yale Univ.*,
  436 F. Supp. 3d 489 (D. Conn. 2020)........................................................................5

*Michel v. Yale Univ.*,
  No. 3:20-CV-01080 (JCH), 2021 WL 2827358 (D. Conn. July 7, 2021) .................6

*O'Connor v. Davis*,
  126 F.3d 112 (2d Cir. 1997).......................................................................................7

*Pemrick v. Stracher*,
  67 F.Supp.2d 149 (E.D.N.Y. Nov. 8, 1999) ..............................................................7

*Sans–Syzmonik v. Hartford Pub. Sch.*,
  2014 WL 7156776 (Conn. Super. Ct. Nov. 7, 2014).................................................8

*Shultz v. Congregation Shearith Israel of City of N.Y.*,
  867 F.3d 298 (2d Cir. 2017).......................................................................................9

*Weinstein v. Univ. of Conn.*,
  2018 WL 2222131 (Conn. Super. Ct. Apr. 25, 2018).........................................8, 10

Plaintiff's three-year term as an unpaid volunteer professor in the Yale Psychiatry Department ended. The Department chose not to offer her a new term as an unpaid volunteer professor after concluding that she lacked important skills for teaching psychiatry trainees, including clear deficits in the use of differential diagnosis and diagnostic determinations that deviated from criteria set out in the DSM-5. She had no contractual right to receive another contract. To the contrary, the Yale Faculty Handbook, which Plaintiff invokes as the basis for her contract claims, makes plain that voluntary faculty in the Yale School of Medicine (which includes the Psychiatry Department) "do not have a right to reappointment," and that reappointment decisions "are subject to the exercise of professional and scholarly judgment by competent University authorities."

A university's determination on who is fit to teach its students lies at the very core of educational decision-making, which is powerfully protected by Connecticut law. As the Connecticut Supreme Court has recognized, a "university's prerogative to determine for itself on academic grounds who may teach is [not only] an important part of our long tradition of academic freedom," but also constitutionally "rooted in the first amendment," and the academic prerogative "prevents courts from substituting their judgment for the judgment of the school." *Craine v. Trinity College*, 259 Conn. 625, 646, 791 A.2d 518, 536 (2002). Plaintiff's opposition to the motion to dismiss repeatedly asks this Court to ignore that fundamental principle. Her opposition, like the operative Complaint, serves as a soapbox, a platform for broad grievances and assertions that fail to satisfy the pleading requirements for the claims she has made. No matter how many times she wraps herself in the mantle of "academic freedom" or names political figures, her opposition cannot explain away the fundamental failures of her pleading. She has not identified a specific contractual promise that Yale allegedly broke, or where that promise was stated, or what facts

could give rise to a finding of bad faith in Yale's academic decision-making. Nor can she explain how the modest benefits she allegedly received as an unpaid voluntary faculty member converted her into an "employee" protected by C.G.S. § 31-51q, or how the university's decision not to offer another term when her contractual term expired amounted "to discipline or discharge." Her repeated invocations of First Amendment rights have no basis when asserted against a private (not state) actor. Analyzing Plaintiff's allegations under applicable law, this Court should conclude that the Complaint has failed to state a claim.

## ARGUMENT

**I.     Yale's Decision Not to Reappoint Plaintiff Was an Academic Judgment Entitled to Deference.**

Yale's motion to dismiss noted that the Faculty Handbook plainly states that voluntary faculty members on term appointments, like Plaintiff, have no right to reappointment, and that the relevant university authorities make those decisions "subject to the exercise of professional and scholarly judgment." Mot. 15.[1] The motion observed that Plaintiff's claim that she should have been reappointed boils down to the contention that Yale improperly exercised that professional and scholarly judgment, and Connecticut law forecloses such a claim. *Id.* at 15-16 (citing *Craine*, 259 Conn. at 646). In addition to *Craine*, the motion cited *Daley v. Wesleyan Univ.*, 63 Conn. App. 119, 133 (2001), which held that "an inquiry into whether an evaluation of a faculty member's 'teaching,' 'scholarship' or 'colleagueship' was accurate, … concerns a requirement representative of an academic relationship because conducting such evaluations is a specialty that is strongly associated with institutions of higher learning, and such an evaluation has little to do with the

---

[1] Throughout this brief, emphasis is added unless otherwise indicated. Likewise, internal brackets, quotation marks and citations are omitted unless otherwise indicated.  Citations to the Memorandum of Law in Support of Defendant's Motion to Dismiss (Doc. No. 32-1) correspond to the page numbers at the bottom of the page.

2

normal attributes of an employee relationship," and such academic decisions are "afforded considerable discretion." *Daley* made clear that a faculty member must establish that a challenged academic decision "was made arbitrarily, capriciously or in bad faith." *Id.* at 134.

The opposition offers a series of disjointed responses. It turns to rhetoric, accusing Yale of arguing that academic freedom is an "absolute shield from a court's inquiry into its decision-making processes." Opp. 5. But Yale argues only that academic judgments on who is qualified to teach are entitled to deference and can be attacked only with factually-supported allegations of bad faith. The opposition notes that *Daley* was an appeal following a trial (Opp. 10), but that does not undermine *Daley*'s enunciation of the standard: it means only that on this motion to dismiss, Plaintiff must plead (not prove) plausible factual allegations of arbitrariness, caprice, or bad faith. And despite being confronted with the argument that she conclusorily alleged legal "bad faith" in her complaint but pled no facts supporting that legal conclusion (Mot. 17), the opposition offers no examples of factual allegations that, if proven, could support a finding of bad faith. Finally, the opposition zig-zags between cases involving employees bringing First Amendment claims against towns and public colleges (Opp. 4, 5, 7) and cases involving federal anti-discrimination claims against universities (Opp. 5-6). Those cases hold that individual First Amendment rights may be brought against state actors including public colleges and that federal anti-discrimination claims must be enforced against college employers. But Yale is a private entity (not a state actor) and Plaintiff does not bring any federal anti-discrimination claims. Neither category of case undercuts the deference that Connecticut law gives a university's academic decisions, which is the issue here.

## II.     Plaintiff's Fails to State a Breach of Contract Claim for Additional Reasons.

Yale noted that while the Complaint refers to a set of documents containing promises (the "Faculty Handbook, policy statements, guidance regulations, and rules applicable to her faculty

3

appointment"), it never identifies what promise Plaintiff thinks was breached. Mot. 20-22. Plaintiff devotes six pages of her opposition to her breach of contract claim but still cannot point to the specific promise she thinks was breached. Was it a promise of an eternal appointment to the voluntary faculty ranks? A promise that her public diagnoses would never be considered evidence of her competence to teach Yale students? A promise that the university would not hold her to the ethical standards of the American Psychiatric Association?

Beyond the fatal lack of specificity as to what the promise was, both the Complaint and her opposition to the motion to dismiss fail to identify the *source* of the undefined promise. The opposition does not address—and thus abandons—any claim that academic misconduct policies were violated (*compare* Compl. ¶ 48 *with* Mot. 27), or that there was a procedural defect in the reappointment process (*compare* Compl. ¶¶ 46-47 *with* Mot. 23-26). Instead, it grounds the breach of contract claim entirely on academic freedom (Opp. 6-12), without ever identifying where the Handbook (or other Yale contractual document) promises voluntary term members of the medical faculty that their public diagnoses would never be used as part of an academic judgment about their competence to teach Yale students. Plaintiff must identify the source of the alleged contractual promise, not only because of *Iqbal*, but also because *Gupta* and its progeny allow exceptions of the general bar on contractual attacks against a university's educational decision-making only if the plaintiff claims violation of "a *specific* contractual promise." *See* Mot. 20-27. Plaintiff generally runs in the opposite direction: instead of pointing to a specific promise regarding academic freedom made by Yale, she invokes her interpretation of the general concept of academic freedom. Opp. 9. The old cases Plaintiff cites from other jurisdictions do not guide the Court in applying Connecticut law to her allegations.

The only specific promise she identifies is Section II of the Faculty Handbook, which prohibits "[p]hysical restriction, coercion, or intimidation." Opp. 8. In response to Yale's argument that an exhortation from the Psychiatry Department chair to abide by the ethical obligations of the profession could not constitute coercion or intimidation at odds with academic freedom (Mot. 23), she asserts that she was intimidated when the chair asked her to meet with him and three other colleagues. She does not explain how being asked to attend a meeting with colleagues can constitute intimidation within the meaning of Section II of the Handbook. If it did, any voluntary term faculty member could say anything publicly—no matter how much it called into question their ability to serve as a teacher or mentor—and have not only a guarantee of endless reappointment, but also an absolute protection from ever having to sit down with their chair and colleagues to talk about it.

### III. Plaintiff Fails to State a Violation of the Covenant of Good Faith and Fair Dealing.

The motion to dismiss noted that a claim for breach of the covenant of good faith and fair dealing "must be tied to an alleged breach of a *specific contract term*, often one that allows for discretion on the part of the party alleged to have violated the duty." *Landry v. Spitz*, 102 Conn. App. 34, 47, 925 A.2d 334, 344 (2007); *see* Mot. 27. That general requirement is underscored in this context, where *Gupta* requires that a plaintiff challenging an academic decision allege the violation of a "specific contractual promise." *Gupta*, 239 Conn. at 593; *see also McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 533 (D. Conn. 2020) (dismissing claim for breach of the implied covenant because plaintiff failed to identify a specific contractual promise as required by *Gupta*). Plaintiff identifies no such specific contractual promise.

Moreover, a plaintiff claiming violation of the covenant must allege bad faith. *Geysen v. Securitas Sec. Servs. USA, Inc.*, 322 Conn. 385, 399, 142 A.3d 227, 237 (2016). Faced with proof

5

that she offered no such allegation, *see* Mot. 27-28 & 17-19, Plaintiff does not respond. Instead, she argues that bad faith is often a fact question. Opp. 13. That is true if a plaintiff has made plausible factual allegations of bad faith, but where she has not, dismissal is appropriate. *See Michel v. Yale Univ.*, No. 3:20-CV-01080 (JCH), 2021 WL 2827358, at *8-9 (D. Conn. July 7, 2021) (dismissing claim for breach of the implied covenant of good faith and fair dealing because plaintiff failed to plead factual allegations that Yale exercised discretion in bad faith).

**IV.    Plaintiff Fails to State a Negligent Misrepresentation Claim**

The motion to dismiss noted that Connecticut law allows a plaintiff to press a negligent misrepresentation claim only if the plaintiff can allege that the defendant knew or should have known that representations it made were untrue when it made them. Mot. 29. Plaintiff abandons her claims that Yale negligently misrepresented "rules related to academic freedom" and "the right to free expression" (Compl. ¶¶ 76-81), instead adopting a new theory that there were "statements … made to her in various forms providing assurances of her faculty appointment." Opp. 14. She does not identify those statements. The only allegation remotely relevant is her claim that Dr. Zonana—who is not the Psychiatry Department chair—told her that "she would continue in her appointment so long as she did her seminar hours and took cases 'on referral.'" (Compl. ¶¶ 37). But the Complaint does not allege that Dr. Zonana knew or should have known that statement was false when made; and it offers no factual averments that would support such an allegation.

**V.    Plaintiff Fails to State a § 31-51q Claim**

**A. Plaintiff Has Not Alleged an Employment Relationship Under § 31-51q**

Plaintiff argues that she is not a volunteer just because Yale called her one, but Yale does not argue that the "voluntary faculty" title is dispositive. She offers little response to the considerable caselaw proffered by Yale explaining which types of remuneration suffice—and

6

which do not—to establish that an employee was "hired" under the threshold remuneration test. Mot. 30-34. Instead, she relies almost exclusively on *Pemrick v. Stracher*, 67 F.Supp.2d 149 (E.D.N.Y. Nov. 8, 1999), a case involving an academic setting but otherwise bearing little resemblance to the facts alleged here. Unlike Plaintiff, Pemrick got a salary. While it came from a third-party foundation rather than the school, the court found the foundation and the school "inseparable," "joint, integrated employers for the purposes of Title VII… both properly deemed Pemrick's employer…." *Id.* at 164-65.

Unable to satisfy the requirements for the threshold remuneration test, Plaintiff moves to the common-law agency, or right to control, test. As the Second Circuit has held, the right-to-control analysis helps distinguish between employees and independent contractors, but it ignores a threshold question—whether the defendant hired the plaintiff at all—and "only where a 'hire' has occurred should the common-law agency analysis be undertaken." *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997). Here, Plaintiff's lack of any allegation that she obtained financial benefit from Yale means she was not hired by Yale. *See generally* Mot. 30-34.

But even if Plaintiff had made the threshold allegation that Yale hired her, the facts alleged in the Complaint would not pass the "right to control" test. She says she had to participate in four hours of student-related teaching or supervisory activities per week (Compl. ¶ 12; Opp. 23), but she doesn't allege Yale controlled those activities. She says she had to do them *at Yale*. Opp. 23. But that proves nothing: an independent housepainter has to do the painting at the house she's hired to paint, but that doesn't mean she's the homeowner's employee under the right-to-control test. Grasping, Plaintiff argues that she could have been fired if she didn't "perform her student-related obligations or maintain a formal teaching role" (Opp. 17), but that doesn't establish control.

7

If the housepainter doesn't paint a house she contracted to paint, the homeowner can fire her, but that doesn't mean she was an employee.

### B. Plaintiff Has Not Alleged She Was Disciplined or Discharged Under § 31-51q.

***Discharge.*** Plaintiff initially alleged that her "reappointment was renewed every three years, ending on June 30, and renewing on July 1." (Dkt. # 1, ¶ 9). After Yale moved to dismiss the first complaint, noting that a non-renewal is not a "discharge" under § 31-51q, Plaintiff amended to delete that allegation. But the Complaint still relies on written communications making clear that she had three-year appointments, and they are incorporated by reference. She tries to hang onto her discharge theory by asking the Court to disregard Exhibit H, the email that notifies Plaintiff of her appointment to her final term of July 2017 to June 2020, but it is properly before the court (Mot. 36-39). And she invokes irrelevant Title VII jurisprudence.

Plaintiff acknowledges the authority uniformly holding that a non-renewal is not discharge under § 31-51q. She tries to distinguish the cases by arguing that they all involved denial of tenure decisions. Opp. 27. That's false: many don't involve denial of tenure, and those that do don't rely on reasoning tied to tenure. *See, e.g., Edwards v. ECSU*, 2017 WL 6601935, at *4 (Conn. Super. Ct. Nov. 22, 2017) (non-renewal of contract for childcare teacher); *Sans–Syzmonik v. Hartford Pub. Sch.*, 2014 WL 7156776, at *8-10 (Conn. Super. Ct. Nov. 7, 2014) (non-renewal of contract for non-tenured high school teacher); *Weinstein v. Univ. of Conn.*, 2018 WL 2222131, at *7 (Conn. Super. Ct. Apr. 25, 2018) (non-renewal of non-tenured position of assistant professor with no discussion of tenure eligibility in finding non-renewal was not discharge). Nor has Plaintiff explained why it would matter that some non-renewals happened in the context of tenure decisions.

Unable to overcome the § 31-51q cases that foreclose her claim, Plaintiff turns to Title VII cases. Opp. 27-28. While agreeing that Title VII jurisprudence is of no utility in assessing the

8

definition of "discipline" under § 31-51q (Opp. 28, n. 15), Plaintiff argues that Title VII cases finding non-renewal claims actionable are relevant in defining what constitutes a "discharge" under § 31-51q. But she hasn't brought a Title VII claim, which has a lower standard: a plaintiff need only allege an "adverse employment action," which can include actions less serious and less final than termination. *See, e.g.*, *Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 304 (2d Cir. 2017). Section 31-51q requires more. Mot. 36.

***Discipline.*** Plaintiff argues in the alternative that taking away her teaching duties constitutes discipline under § 31-51q. Opp. 25-27. But she never addresses the fact that she had already ceased teaching when Yale decided it would not seek another teaching role for her. Nor does she allege that anyone promised or guaranteed that she would have a teaching role going forward.[2] Mot. 39-40. Though she asserts that Yale stripped her of her teaching duties, the Complaint and the documents incorporated by reference make plain that there was nothing to "strip" from her; by the beginning of 2020, she was not teaching. (Compl. ¶ 53; September 2, 2020 Letter, Exh. B).[3] That Yale chose not to find new teaching duties for her does not mean it disciplined her. *See Bombalicki v. Pastore*, No. 378772, 2000 WL 726839, at *3 (Conn. Super. Ct. May 10, 2000) (ruling "'[d]iscipline' is an affirmative act of deprivation that diminishes the status or happiness of the recipient rather than a failure to enhance that status or happiness," not "[a] withholding of a benefit-even a benefit that was due or promised"); *Weinstein*, 2018 WL 2222131,

---

[2] She alleges Dr. Zonana approved a curriculum she was planning for a Fall 2020 course, but her alleged plans for the fall semester do not matter absent a claim that Yale promised she would teach a course the next semester.

[3] Plaintiff argues Exh. H was not incorporated by reference. Opp. 29. She does not argue that any other Exhibits (like Exh. B) were not incorporated, acknowledging their incorporation. And she is wrong about Exh. H: she ignores the recent Second Circuit cases on incorporation set out at Mot. 4 n.2, 11-12, 37, instead relying on Ninth Circuit and E.D.Wa. precedent and older cases. Opp. 29.

9

at *7 (defining discipline as "any adverse material consequence relative to a right, term, condition or benefit of employment that *existed at the time of the protected speech*").[4]

### C. Plaintiff Offers No Response to the Constitutional Arguments Against the Application of Section 31-51q.

Yale explained in its opening brief why Section 31-51q, as interpreted by Plaintiff, would be unconstitutional. Mot. 40-41. Moreover, the Connecticut Supreme Court has recognized—long after Section 31-51q was enacted—that universities have a First Amendment freedom to determine for themselves who may teach, so even if the statute were facially constitutional, it would be unconstitutional as applied to university decisions on faculty appointments. Mot. 41-42. Finally, Yale noted that this Court could avoid constitutional problems here by reading the statutory terms more narrowly than Plaintiff, consistent with its duty to read state statutes constitutionally if possible. Mot. 42. Plaintiff expresses some "confusion" over these arguments (Opp. 1), but never responds to them.

## CONCLUSION

The Amended Complaint should be dismissed in its entirety with prejudice.

Dated:  December 13, 2021                Respectfully submitted,

/s/ *Jonathan M. Freiman*
Jonathan M. Freiman (ct24248)
Caroline B. Park (ct29049)
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832

---

[4] Plaintiff relies heavily on *Matthews v. Dep't of Pub. Safety*, 2013 WL 3306435, at *14 (Conn. Super. Ct. May 31, 2013), which found an allegation of "removal of duties" sufficient to plead discipline when combined with other affirmative acts including transferring plaintiff to a new position, targeting plaintiff in "bogus" investigations, and choosing examiners expected to give plaintiff a failing grade on a promotion exam. *Id.* at 14. No duties were "removed" from plaintiff, nor does she allege she was subjected to any other actions the plaintiff in *Matthews* alleged.

                    New Haven, CT 06508-1832
                    Tel: (203) 498-4400
                    Fax: (203) 782-2889
                    jfreiman@wiggin.com
                    cpark@wiggin.com

*Counsel for Defendant*